**EMPLOYERS CASUALTY COMPANY,
Petitioner,**

**v.**

**Joe TILLEY et al., Respondents.**

**No. B–3667.**

Supreme Court of Texas.

June 13, 1973.

Rehearing Denied July 25, 1973.

Fuller, Fuller & McPherson, James S. Fuller, Port Arthur, for petitioner.

Orgain, Bell & Tucker, Lawrence Louis Germer and John G. Tucker, Beaumont, for respondents.

DANIEL, Justice.

This is a declaratory judgment action filed on January 22, 1971, by Employers Casualty Company, the insurer, against "Joe Tilley, d/b/a Joe's Rental Tools and/or Oil City Casing Crews, Joe's Rental Tools Company, a corporation," the insured, seeking a determination that a policy violation by the insured (late notice) relieved the insurer of any obligation to defend a personal injury suit instituted by Douglas Starky against the insured on September 19, 1969. Tilley and the corporations named above will be referred to collectively as "Tilley".

Prior to filing the instant suit, Employers on October 6, 1969, secured a standard non-waiver agreement from Tilley and engaged an attorney to represent Tilley as his attorney in the Starky personal injury suit. For a period of nearly 18 months, the attorney not only performed such services for Tilley in defending against Starky, but he also performed services for Employers which were adverse to Tilley on the question of coverage. Tilley claimed that he had no knowledge of the Starky accident which occurred on November 25, 1967, until he was sued on September 19, 1969. This was his excuse for not notifying Employers before the suit was filed.

Knowing of Tilley's contention, the attorney did not advise him of the apparent conflict of interest between Tilley and Employers. Instead, he continued to act as Tilley's attorney while actively working against him in developing evidence for Employers on the coverage question. Such evidence subsequently became the basis for this suit, filed by another attorney for Employers against Tilley, seeking to deny coverage on the grounds of late notice. Tilley filed a cross-action, alleging among other things waiver and estoppel.

Both parties moved for a summary judgment. The trial court denied Employers' motion and granted Tilley's, rendering a judgment that (1) the policy is in full force and effect and that Employers is obligated to defend Tilley in the Starky suit, and (2) that Employers must pay any judgment entered against Tilley in the Starky suit up to the limits of its policy. Evidently upon the authority of Firemen's Insurance Company of Newark v. Burch, 442 S.W.2d 331 (Tex.1968), the Court of Civil Appeals reformed by striking out the latter portion of the judgment, (2) above.

It then affirmed the trial court's judgment as reformed. 484 S.W.2d 802. We disagree with the reasons stated for the affirmance; but for other reasons hereinafter explained, we affirm the judgment of the Court of Civil Appeals.

Douglas Starky (whose name is also frequently spelled "Starke" in various briefs and pleadings) was an employee of Prudential Drilling Company at the time of his injury on a Prudential well site on November 25, 1967. Tilley, as an independent contractor was furnishing tools and employees for the lifting of casing pipe off a Prudential platform. Starky had tied the "catline" to a casing pipe immediately prior to the pipe slipping and falling upon him, causing injuries which subsequently resulted in the loss of his right arm. It was Tilley's equipment and crew which were lifting the pipe after it had been supposedly secured to the catline by Starky. Grady Fore was Tilley's foreman in charge of the Tilley crew and operating the lift at the time the pipe slipped. He said the accident was due to the manner in which Starky tied the catline to the pipe rather than to the manner in which he lifted the pipe. It is undisputed that Fore knew of the occurrence, but it is disputed as to whether he or anyone else told Tilley of the accident or whether Tilley had actual notice of it before Starky filed suit against Tilley on September 19, 1969.

Employers concedes its coverage and duty to defend Tilley, unless as now contended in this suit, Tilley had actual or imputed knowledge of the accident when or soon after it occurred. If so, Employers contends that Tilley has lost coverage for failure to comply with the following provision of the policy:

"4. INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT: (a) In the event of an occurrence, written notice, containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable."

While Employers alleges that Tilley had actual notice of the "occurrence" soon after the accident in 1967, its motion for summary judgment was based solely upon undisputed proof that Tilley's foreman, Grady Fore, was present and had knowledge of the occurrence on November 25, 1967; its contention that this knowledge was imputed to Tilley; and that failure of Tilley to give notice for 20 months was, as a matter of law, a breach of the notice provisions of the policy. Tilley raised a disputed issue of fact concerning Fore's responsibilities and authority as an employee of Tilley; proved that the attorney selected by Employers, while representing Tilley in the personal injury case, developed the adverse evidence about Fore's knowledge; and asserted that this and other adverse conduct created a waiver and estoppel against Employers as a matter of law. Under such circumstances, the trial court properly overruled Employers' motion for summary judgment.

Tilley's motion for summary judgment contained the following allegations:

1. Neither Joe Tilley nor any officer of any of the defendant corporations were ever aware of the accident in question until suit was filed.

2. Even if Joe Tilley or someone authorized to act for him had been aware of the accident, no reasonable person would ever have believed that suit would be filed; that any claim would be made; or that any liability could exist against Tilley.

3. Employers Casualty assumed the defense of the suit filed by Starky and continued same for a period of a year and a half. This action constitutes a waiver or estoppel and precludes the

company from denying coverage. The non-waiver agreement does not prevent an estoppel for the following reasons:

(a) The non-waiver agreement is a broad form which is not limited to late notice and is therefore void and unenforceable.

(b) Even if the non-waiver agreement does in fact protect the company from waiving any rights it has, the agreement does not purport to prevent an estoppel from operating against the company.

4. Even after the non-waiver agreement was signed, the company requested that Joe Tilley, at his own expense, furnish his employees for statements. This conduct waives the non-waiver agreement and waives the right to rely upon any policy defense.

5. During the period that Employers Casualty purported to offer a defense to Tilley, the company without any warning or notice to Tilley of any conflict of interests committed the following acts in breach of their fiduciary duty through its agents and attorneys:

(a) The attorney engaged by Employers to represent Tilley took a statement from Tilley's foreman to establish that Tilley had notice through the foreman of the accident.

(b) The attorney took four other statements from Tilley employees seeking to establish that they had informed Tilley of the accident, knowing at the time that this was contrary to Tilley's position.

(c) The same attorney briefed the legal question of late notice for Employers without advising Tilley of his actions or his findings.

(d) The attorney interviewed two other persons at the request of Employers to establish the late notice defense now asserted by Employers against Tilley.

(e) The attorney, over a period of a year and one-half wrote numerous letters and engaged in numerous oral conversations with the insurance company pertaining to developing its coverage defense, suggesting additional investigation, and advising as to the legal possibilities of establishing such defense.

6. All of the aforesaid action was taken although Tilley was never advised by the attorney or Employers that there was any conflict of interest; or that the attorney was acting for Employers and against Tilley with regard to the question of late notice; or that the statements which were taken were going to effect [sic] the coverage question as opposed to being simply a preparation of the defense of the liability suit; or that he needed a lawyer to protect him; or that the attorney would not be representing him fully.

The factual allegations, as distinguished from the conclusions, in 3 through 6 above were adequately supported by undisputed summary judgment proof. In appealing the trial court's judgment in favor of Tilley, Employers assigned three points of error in the Court of Civil Appeals:

1. Error of trial court in overruling its motion for summary judgment because the proof established as a matter of law that Tilley's supervisor had notice of the accident which was notice to "the corporate defendant," which constituted a breach of the policy.

2. Conduct of an attorney employed by Employers to represent defendants in the original suit could not, as a matter of law, constitute a waiver or estoppel to assert its policy defense of late notice.

3. The trial court erred in granting Tilley's motion for summary judgment for the reason that the summary judgment proof at most only raised a fact issue on the question of waiver or estoppel by appellant to assert its policy defense of late notice.

■ The Court of Civil Appeals held that Employers failed to assign as error all of the grounds asserted by Tilley in his motion for summary judgment, any one of which might have been the basis for the granting of the motion. 484 S.W.2d at 802. According to the Court of Civil Appeals, the two omitted assignments were: (a) that the non-waiver agreement in question was too broad and not a valid non-waiver agreement, and (b) that the agreement by its terms does not cover an estoppel but only a waiver. We disagree with this holding because neither of the two points, standing alone or together, could form the basis for a summary judgment for Tilley in this case. Both were ancillary to the controlling question of whether a waiver or estoppel was established as a matter of law. They were asserted by Tilley as reasons why the non-waiver agreement does not prevent an estoppel. (See Tilley's allegation 3 above). Both were adequately preserved and included under Employers' second and third points in the Court of Civil Appeals.

The controlling question with respect to the affirmed portion of the trial court's summary judgment in favor of Tilley is whether the summary judgment proof establishes as a matter of law that Employers waived or is estopped from asserting its policy defense of late notice. This necessarily includes the ancillary questions mentioned above. The Court of Civil Appeals has not decided or written upon the merits of these controlling points raised by Employers. That now becomes our task.

As indicated above, the ultimate question in reviewing any summary judgment is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of plaintiff's cause of action. Farley v. Prudential Insurance Co., 480 S.W.2d 176 (Tex.1972). The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against him. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Farley, supra.*

Assuming, as we must, that Tilley had actual or imputed notice of the Starky accident when or soon after it occurred and that the non-waiver agreement is valid, we are still confronted with the undisputed proof that it was the attorney furnished by Employers to represent Tilley in the Starky suit who at the same time worked for Employers adversely to Tilley in developing the evidence upon which this suit for denial of coverage is based; that the development of evidence and briefing against Tilley on the coverage question was sought and paid for by Employers, without Tilley being informed of the conflict of services being performed by his attorney; that Employers, through this attorney, continued to represent Tilley for nearly 18 months before withdrawing; and the forceful argument that such conduct constituted a waiver of the policy defense and was so contrary to public policy that Employers is estopped as a matter of law from denying its responsibility for the defense of the Starky case. As heretofore indicated, we are also confronted with the question of whether the standard non-waiver agreement (that no action heretofore or hereafter taken by Employers shall be construed as a waiver of the right, if any, of Employers to deny liability under the policy) signed by Tilley on October 6, 1969, permitted such adverse conduct during the subsequent 18 months by the lawyer chosen to represent Tilley, and whether it protected Employers against any waiver or estoppel that might otherwise result from such representation of conflicting interests and delay in actually disclaiming liability.

■ These are serious questions involving legal ethics and public policy with which this Court has not dealt under like circumstances. Counsel for both parties apparently concede that similar situations often confront insurers and attorneys employed by them to represent insureds under

comprehensive liability insurance policies and that guidelines from this Court would be welcomed, even though the parties disagree as to what the guidelines and consequences should be. At the outset, it should be stated that the impeccable reputation of the attorney engaged by Employers to represent Tilley, Mr. Dewey Gonsoulin, and the fact that his conduct may be representative of the customary conduct of counsel employed by insurance companies in similar situations, is not questioned by counsel for Tilley nor by this Court. However, as stated by courts of other jurisdictions which have dealt with the problem, custom, reputation, and honesty of intention and motive are not the tests for determining the guidelines which an attorney must follow when confronted with a conflict between the insurer who pays his fee and the insured who is entitled to his undivided loyalty as his attorney of record. Van Dyke v. White, 55 Wash.2d 601, 349 P.2d 430 (1960); Hammett v. McIntyre, 114 Cal.App.2d 148, 249 P.2d 885 (1952).

### Duties of Insurers and Attorneys Employed to Represent Insureds

■ Under the policy in question (comprehensive liability) the insurance company's obligation to defend the insurer provides that the attorney to represent the insured is to be selected, employed and paid by the insurance company. Nevertheless, such attorney becomes the attorney of record and the legal representative of the insured, and as such he owes the insured the same type of unqualified loyalty as if he had been originally employed by the insured. If a conflict arises between the interests of the insurer and the insured, the attorney owes a duty to the insured to immediately advise him of the conflict. These principles were enunciated in Automobile Underwriters' Insurance Co. v. Long, 63 S.W.2d 356 (Tex.Comm.App.

1933), a case in which the company assumed the defense but later withdrew under a claim of a policy violation (non-cooperation), and retraction by insured of a non-waiver agreement obtained without sufficient explanation of the coverage conflict. The court clearly affirmed the attorney's duty as follows:

> "When counsel were employed by the company they became Long's [the insured] unqualified attorneys of record, and as such they owed him the duty to conscientiously represent him, and if the point was reached where his interests and those of the company conflicted, he should have been so informed and given the opportunity to protect himself."

Canon 5 of the Code of Professional Responsibility promulgated by this Court on December 20, 1971, deals specifically with conduct of a lawyer representing multiple clients with conflicting or potentially conflicting interests.[1] Representation of "an insurer and his insured" is mentioned among typically recurring situations involving potentially differing interests. Ethical Considerations 5–16 under Canon 5 provides:

> "EC 5–16. In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent. If there are present other circumstances that might cause any of the multiple clients to question the undivided loyalty of the lawyer, he should also advise all of the clients of those circumstances."

1. Code of Professional Responsibility (1971) following Article 320a–1, Vernon's Annotated Texas Statutes, pocket part pp. 84–85. Similar conduct prior to December 20, 1971, was covered by Canon 6. See also Canon 5 of the American Bar Association, 94 Reports of the American Bar Ass'n 729 (1969).

The American Bar Association National Conference of Lawyers and Liability Insurers made a careful study of this recurring problem and issued a list of "Guiding Principles" for the guidance of liability insurers furnishing legal counsel for their insureds.[2] Two of the principles which are relevant here read in part as follows:

"IV. CONFLICTS OF INTEREST GENERALLY—DUTIES OF ATTORNEY. In any claim or in any suit where the attorney selected by the company to defend the claim or action becomes aware of facts or information which indicate to him a question of coverage in the matter being defended or any other conflict of interest between the company and the insured with respect to the defense of the matter, the attorney should promptly inform both the company and the insured, preferably in writing, of the nature and extent of the conflicting interest. . . .

"V. CONTINUATION BY ATTORNEY EVEN THOUGH THERE IS A CONFLICT OF INTERESTS. Where there is a question of coverage or other conflict of interest, the company and the attorney selected by the company to defend the claim or suit should not thereafter continue to defend the insured in the matter in question unless, after a full explanation of the coverage question, the insured acquiesces in the continuation of such defense . . . ."

■ We approve the above quoted "guiding principles" as conforming to the public policy of this State heretofore enunciated by this Court in our Canons of Ethics. They follow the same general principles earlier recognized by Texas courts. See Automobile Underwriters' Insurance Co. v. Long, *supra*; Travelers Ins. Co. v. Chicago Bridge & Iron Co., 442 S.W.2d 888 (Tex.Civ.App.1969, writ ref. n.r.e.); and Barreda Corp. v. Ballenger, 116 S.W.2d 442 (Tex.Civ.App.1938, writ dism'd).

Conduct in violation of the above principles by the insurer through the attorney selected by it to represent the insured has been condemned by the highest courts of several other jurisdictions. In Perkoski v. Wilson, 371 Pa. 553, 92 A.2d 189 (1952); Tiedtke v. Fidelity & Casualty Company of New York, 222 So.2d 206 (Fla.1969); Bogle v. Conway, 199 Kan. 707, 433 P.2d 407 (1967); Crum v. Anchor Casualty Company, 264 Minn. 378, 119 N.W.2d 703 (1963); Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 179 A.2d 505 (1962); and Van Dyke v. White, 55 Wash.2d 601, 349 P.2d 430 (1960), analogous conduct in violation of such principles was held to preclude or estop the insurer from denying coverage or liability. See also general criticisms and consequences of such conduct discussed in Meirthew v. Last, 376 Mich. 33, 135 N.W.2d 353 (1965); and Newcomb v. Meiss, 263 Minn. 315, 116 N.W.2d 593 (1962).

### Effect of the Non-Waiver Agreement

■■ The above guiding principles are not diluted or nullified by a general non-waiver agreement. The printed non-waiver form signed by Tilley on October 6, 1969, did not authorize Employers to use the same attorney to represent Tilley in the personal injury suit and to actively work against Tilley on the conflicting coverage question, without informing Tilley of the specific conflict and affording him the opportunity to employ his own counsel. Non-waiver agreements are strictly construed against the insured and will not be extended by implication beyond their exact terms. Springfield Fire & Marine Ins. Co. v. Hassen, 53 S.W.2d 1031 (Tex.Civ.App. 1932, no writ). In this opinion, written by the late Chief Justice J. E. Hickman, it was said: "Acts not coming within the plain import of the nonwaiver agreements may operate as a waiver." See also United States Fidelity and Guaranty Company v. Bimco Iron and Metal Corporation, 464

2. "National Conference of Lawyers and Insurers—Guiding Principles" 20 Federation of Insurance Counsel Journal 95 et seq. (1970).

S.W.2d 353 (Tex.1971); and 16A Appleman, Insurance Law and Practice, § 9377, 879–882. Appleman, at pages 879–880, states:

"It is clear, however, that a nonwaiver agreement can be waived either expressly or impliedly by the insurer or its authorized representatives. Such agreements are construed strictly against the insurer and liberally in favor of the insured, and will not be extended beyond the exact terms of the agreements . . . . The mere obtaining of a nonwaiver agreement does not give the insurer a right to do anything it may wish to prejudice the rights of the insured and thereafter continue to rely upon the nonwaiver agreement, since such agreement may be waived by the insurer's subsequent conduct."

The subsequent conduct of Employers through the same attorney it had engaged to represent Tilley was clearly in violation of the public policy set forth in the above guiding principles. An attorney employed by an insurer to represent the insured simply cannot take up the cudgels of the insurer against the insured as was done in the Starky case at Employers' behest. The parties concede that non-waiver agreements are taken as a matter of course in most cases which insurance companies are called upon to defend. To interpret the effect of the non-waiver agreement as permitting such subsequent action and relieving Employers of the consequences thereof, would completely nullify the above guiding principles which arise from the attorney-client relationship. The obligation of Employers and the attorney to notify Tilley of the specific conflict, and the consequences of their failure to do so are not relieved by the standard non-waiver agreement. Bogle v. Conway, *supra*; Newcomb v. Meiss, *supra*; and Tiedtke v. Fidelity & Casualty Company of New York, *supra*.

### Effect of Subsequent Conduct of Employers and Attorney

■ Even when no violation of public policy is involved, an estoppel may arise from silence, where there is a duty to speak, and failure to do so worsens or prejudices the position of the party to whom the duty is owed. Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582 (1912). Employers contends that no prejudice has been shown as a matter of law to have occurred by reason of its conduct or silence. We disagree. Tilley was led to make his employees available for statements, sometimes on his own time and at his own expense, with no reason to think that his attorney was working other than in his own interest. The second statement taken from his foreman, Grady Fore, on March 12, 1970, admittedly had as one of its purposes the development of late notice evidence against Tilley. It was taken by the attorney for that purpose at the request of Employers; and from that date until he withdrew from the Starky case on or about May 11, 1971, this attorney continued at various times to send evidence, information and briefs to Employers, at its request, on the late notice question. Such attorney originally engaged by Employers to represent Tilley will be referred to hereinafter as "Employers—Tilley attorney," to distinguish his actions from those of the present attorney engaged by Employers to bring this suit against Tilley for a declaratory judgment.

■ A comparison of the Grady Fore deposition taken in this suit by Employers' present attorney with the question and answer statements of the same witness taken by the Employers—Tilley attorney during the time he was representing Tilley, shows that the latter were the source of the former. In fact, Grady Fore's sworn statements previously taken by the Employers—Tilley attorney were used in the examination of Fore by Employers' attorney in the present case, with threats of prosecution for perjury for changing or failing to recall his previous sworn statements.

Employers argues that this work and gathering of evidence by the Employers—Tilley attorney was not prejudicial because it could have been developed just as easily by one of Employers' agents, investigators

or other attorneys. Armed with its non-waiver agreement, that is precisely the manner in which Employers was free to develop its case against Tilley on the coverage question *without running the risk of waiver or estoppel.* Whether Employers would have been as successful in gathering evidence through other attorneys as it was through the attorney that Tilley and his employees thought to be looking after nothing but Tilley's defense, is a matter of speculation. It falls in the realm of what might have been. We are here concerned with what actually occurred—the means by which Employers actually developed the evidence of Grady Fore's knowledge and Tilley's alleged knowledge of the accident which occurred on November 25, 1967, on which the present declaratory judgment suit is based.

It is undisputed that the work of the Employers—Tilley attorney on the coverage issue now involved in this law suit was not on his own initiative or merely incidental to his defense of Tilley; it was at the instance and request of Employers and for its benefit against Tilley. As indicated, both Employers and the Employers—Tilley attorney owed an obligation to immediately notify Tilley of the conflict on the specific coverage question which was known to them on or soon after October 9, 1969. Their failure to do so for nearly 18 months can be attributed only to Employers' desire to strengthen its position in preparation for the filing of the instant suit. We think prejudice to Tilley in the Starky case and in this case has been shown as a matter of law.

Under the undisputed facts and circumstances of this case, it would be untenable to permit Employers to disclaim liability for the defense of Tilley in the Starky suit on account of the late notice defense. Its conduct being violative of the guiding principles and public policy heretofore discussed, we hold that Employers is estopped as a matter of law from denying the responsibilities under its policy for defense of the Starky suit.

Accordingly, for the reasons stated in this opinion, the judgment of the Court of Civil Appeals is affirmed.

SAM D. JOHNSON, Justice (concurring).

This opinion, concurring only in the result reached by the majority, is respectfully presented.

At the outset it must be borne in mind that this suit is between two parties only, these being Joe Tilley and Employers Casualty Company. The attorney who was selected and employed by Employers Casualty Company and to whom reference will hereinafter be made, was not a party to this action. What is recited herein, therefore, has *not* been factually established against the attorney. What is recited herein has, however, been factually established as between the two principals to this action and insofar as it involves the conduct of the attorney is pertinent because it is upon this that the instant case principally turns.

This court's opinion recites that certain factual allegations are adequately supported by summary judgment proof. As pertinent here these facts are that Employers Casualty Company assumed the defense of Tilley and employed an attorney to represent him. Thereafter the attorney, while representing Tilley, took statements from Tilley's employees knowing that they were contrary to Tilley's position, briefed legal questions pertaining to the case for Employers Casualty contrary to Tilley's position, interviewed persons to establish a defense against Tilley for Employers Casualty, and engaged himself in oral conversation and by letter with Employers Casualty in the development of a defense for it against Tilley. During all of this period of "representation" which lasted almost one and one-half years, at no time was Tilley informed by the attorney (or by Employers Casualty) "that there was any con-

flict of interest; or that the attorney was acting for Employers and against Tilley . . . ."

The majority opinion states the controlling question as "whether the summary judgment proof establishes as a matter of law that Employers waived or is estopped from asserting its policy defense of late notice." This question could and should be forcefully answered in the affirmative based solely on the consideration that the recited conduct, accomplished by the attorney for Employers Casualty, as a matter of public policy, constituted a waiver of the policy defense and that Employers Casualty is estopped as a matter of law from denying its responsibilities under the policy.

The majority's second question is whether the non-waiver agreement permitted such adverse conduct by the attorney in his representation of Tilley. This question could and should be answered with even stronger forcefulness in the negative, again based upon the consideration of public policy which must find it untenable.

It is proper to hold, as the majority has, that an attorney's actions, as in this situation, affect the rights of the parties to the lawsuit, i. e., Tilley has been advantaged by an estoppel against Employers. Yet we should not let our attention to the merits of the controversy between Tilley and Employers so absorb us that we fail to look to that to which this court should be particularly sensitive—and that which underlies the present case disposition—the ethical considerations involved in the attorney-client relationship made evident in the instant record.

This court's Code of Professional Responsibility, enacted as late as December 21, 1971,[1] compels our attention. These Canons were formulated to govern attorneys, they are directed to lawyers, they set the proscriptive limits for members of the legal profession. The fourth Canon speaks

to the fiduciary relationship between a lawyer and his client and the principle that the confidence of a client must be held inviolate; the fifth recites that the lawyer's professional judgment is to be used *solely* for the benefit of his client and that no conflicting interest shall dilute such loyalty.

If the representation from the record described by the opinion of the majority is to be considered as a representation of two or more clients, the ethical considerations enumerated under the Interests of Multiple Clients are controlling.

"EC 5–14. Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interest be conflicting, inconsistent, diverse, or otherwise discordant.

"EC 5–15. If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. . . ."

If it be contended that these acts occurred prior to the adoption of the present Code of Professional Responsibility, the previous Rules Governing the State Bar of Texas, Section 3, Article XIII, would be equally stringent.

1. Code of Professional Responsibility (1971) following Article 320a–1, Texas Revised Civil Statutes Annotated.

"Canon 6. *Adverse Influences and Conflicting Interests.* It is the duty of a member at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in, or connection with the controversy which might influence the client in the selection of counsel.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this rule, a member represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose. . . ."

.    .    .    .

"Canon 34. *Confidences of a Client.* The duty to preserve his client's confidence outlasts the member's employment, and extends as well to his employees; and neither of them should accept employment which involves the disclosure or use of these confidences, either for the private advantage of the member or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A member shall not continue employment when he discovers that this obligation prevents the performance of this full duty to his former or to his new client. . . ."

These two parties, Tilley and Employers Casualty, had differing interests and this was known to the attorney either at the outset or after only a very few days from the attorney's employment. Even with such knowledge there was no withdrawal by the attorney; there was no information or explanation concerning the conflict given to Tilley. To the contrary, the record strongly suggests concealment of the conflict from Tilley for the purpose of ultimately promoting the interest and position of Employers Casualty over that of Tilley; by providing a defense for Employers Casualty whereby it would have no obligation to Tilley.

The representation provided by the attorney more appropriately should be construed as representation of a single client, Tilley. The majority opinion of this court recites that the policy in question provides that the attorney to represent the insured is to be selected, employed and paid by Employers Casualty but that such attorney is to be the attorney of record and legal representative of the insured (Tilley) and owes to him the same type of unqualified loyalty as if he had been originally employed by him. The "unqualified loyalty" of the attorney to his client (Tilley) tolerates no comparison against those factual recitals made in the majority opinion. Such conduct must be measured by the first of the ethical considerations enumerated under Canon 5 which relates to the lawyer's duty, obligation and loyalty to his client.

"EC 5–1. The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client."

The Ethical Considerations under Canon 5 make it clear that situations where the cost of legal services are borne by a third party are ethically proper only so long as control remains in the client and the responsibility of the lawyer is solely to the client.

This court's majority opinion has concluded that the attorney's actions, as in the present instance, affect the rights of the two parties to this action as against each other. The "guiding principles" should not be concepts which have not been considered or approved by the bench and bar of this state; the "guiding principles" should be this court's Code of Professional Responsibility which speaks precisely

and directly to the permissible actions of attorneys. This court should not be considering the ethical obligation, whatever it may be, which is required of a commercial enterprise to its customer; this court should be considering the fiduciary relationship inherent in the attorney-client relationship and the effect of its transgression upon the rights of the parties hereto.

