**IDEAL MUTUAL INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**Roy MYERS and Syble Myers, Independent Executor and Executrix of the Estate of John Dan Myers, Deceased, and Mildred Alice Strother, Individually and as Next friend of Phillip Samuel Strother, Jr., A Minor, and Illinois National Insurance Company, Defendants-Appellants.**

No. 84–1821.

United States Court of Appeals, Fifth Circuit.

May 21, 1986.

Carter, Jones, Magee, Rudberg & Mayes, John E. Agnew, Dallas, Tex., for Myers.

John E. Collins, Dallas, Tex., for Strother.

Edwin E. Wright, III, Dallas, Tex., for Ill. Nat. Ins. Bank.

Before GEE, GARZA and HIGGIN-BOTHAM, Circuit Judges.

GARZA, Circuit Judge:

This case is before us following summary judgment in favor of Ideal Mutual Insurance Company [1] ("Ideal") on its declaratory judgment action against Syble Myers,[2] Independent Executrix of the Estate of John Dan Myers (the "Myers Estate"), Mildred Alice Strother and Phillip S. Strother, Jr., wife and son of Phillip S. Strother (the "Strothers") and Illinois National Insurance Company ("Illinois National"), Strother's workmen's compensation carrier (collectively, the "defendants"). The insurance dispute giving rise to Ideal's suit stems from an airplane accident in which Myers, the pilot, and his sole passenger, Strother, were killed. The accident occurred on the morning of January 7, 1978, shortly after Myers and Strother had taken off from Rockwall Texas Airport in a single-engine aircraft en route to Wichita Falls, Texas.

By letter dated July 14, 1978, the Myers Estate demanded, through Charles S. England of "Aero Adjustment Bureau" (Ideal's adjuster), payment on the insurance policy which Ideal issued to Myers.[3] On April 12, 1979, the Strothers made a wrongful death demand on Don R. Stodghill, the probate attorney representing the Myers Estate. A week later Stodghill forwarded that demand to England. On June 8, 1979, Ideal's counsel informed Stodghill that coverage on the policy would have to await Ideal's investigation of the accident, and asked to be informed of any further demands from the Strothers.

---

1. Ideal was ordered into liquidation in New York on February 7, 1985, and is now in receivership in bankruptcy court.

2. Roy Myers, who was also Independent Executor of the Myers Estate, died on May 6, 1981. After his death Syble Myers became the sole Executrix and representative of the Estate.

3. The Ideal policy in question, Policy No. AHL 003596, was issued to John Dan Myers d/b/a Commercial Welding Service. It covered a 1968 Piper PA–28–180 aircraft (FAA Reg. No. N–5127L) for period from July 12, 1977 to July 12, 1978, and insured John Myers for all sums up to the policy limit of $100,000 which he became

"legally obligated to pay as damages because of bodily injury ... including death at any time resulting therefrom, sustained by any passenger ... caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft." [Coverage B].

"The word 'passenger' means any person or persons while in, on or entering the aircraft for the purpose of riding or flying therein or alighting therefrom following a flight or attempted flight therein, excluding crew or pilots." Philip S. Strother, Sr. was a passenger under that definition.

"'Occurrence' means an accident ... which results in injury during the Policy Period, provided the injury is accidentally caused...."

The Strothers filed a wrongful death action against the Myers Estate on January 4, 1980, in the 86th Judicial District Court of Rockwall County. On February 1, 1980, the Myers Estate informed Ideal's counsel of the Strothers' action. By letter dated February 20, 1980, England advised the Myers Estate that Ideal had retained attorney John McElhaney to defend the Estate in the Rockwall action. However, the letter contained a "reservation of rights" based on 1) Ideal's investigation that at the time of the accident the weather conditions required Myers to have an instrument flight rating ("IFR"), and on 2) the fact that Myers only had a visual flight rating ("VFR").[4] On February 22, 1980, McElhaney, on behalf of the Myers Estate, filed an answer in the Rockwall action.

Ideal, on March 12, 1980, filed a declaratory judgment action, asserting that the policy did not cover the aircraft accident, and that Ideal was not obligated under the policy to defend the Rockwall action or to pay any judgment rendered against the Myers Estate arising out of the January 7, 1978, plane crash. On January 8, 1982, Syble Myers and Mildred Alice Strother entered into a settlement agreement, which resulted in the dismissal of the Rockwall action on June 2, 1982.[5] As a result, on March 22, 1982, Ideal filed a supplemental

---

4. The letter provides in pertinent part:

It appears from our investigation that at the time this accident occurred, the aircraft was being operated in instrument meteorological conditions of less than visual meteorological conditions. Mr. John Dan Myers did not hold a valid and current instrument rating and therefore was not a pilot "holding a valid and effective pilot ... certificate with ratings as required by the Federal Aviation Administration for the flight involved ...".

For the purpose of preserving the rights of all concerned and without waiving, prejudicing or invalidating the position of the insurer in any way, they are willing to further investigate the facts and circumstances in connection with the alleged accident, and to defend the said suit at their own costs and expense, without, however, admitting coverage or liability to you or to the Plaintiff in any manner whatsoever in connection with the said investigation and defense. Your insurer specifically reserves all rights to fully deny any coverage under the policy or certificate of insurance in question for any reason whatsoever that may appear in the future in addition to those mentioned above specifically, and to withdraw from the defense if they should decide to do so. Your insurers further reserve all rights to deny any and all liability under the policy or certificate of insurance at any time, even after trial and judgment.

The amount sued for is in excess of the limits of the policy of insurance issued by your insurers. While the firm of Locke and Pernell have been employed to defend you, and will do so to the best of their ability, we wish to advise you that you are at liberty to secure counsel of your own choice, at your expense, to represent you in regard to the amount which is in excess of your insurance coverage. It is my duty to inform you that as to such excess there could be a conflict of interest between your insurers and the Estate and that if negligence of the insurers causes a judgment to be rendered against the Estate in excess of the insurance limits, it could be that the company might be responsible for the excess judgment.

This is not to suggest that you are compelled to employ an attorney, but is simply to inform you that you are at liberty to do so, and that the firm of Locke and Pernell will cooperate fully with such attorney if you care to employ one in the defense of this matter.

Of course, it is understood that none of your rights or contentions under your policy are waived.

5. Although the Ideal policy limited coverage to $100,000, and although the Strothers' state claim prayed for only $400,000, the settlement was for $750,000. The Strothers agreed "not to enforce this settlement agreement against Myers ... by any legal action or claim save and except any legal action or claim for the proceeds of any insurance that might be provided by Ideal Mutual Insurance Company and no other."

The agreement further provided that Myers in and for the consideration hereinafter expressed, agrees to assign to Strother any and all claims and/or causes of action Myers has or may have in the future against Ideal Mutual Insurance Company for its failure to defend Myers, for its failure to notify Myers of a conflict at the time of its investigation of the claim, for its negligence, breach of contract and failure to settle in good faith the claim between Myers and Strother within the policy limits of the policy attached hereto ... This assignment by Myers is complete save and except for Myers' reservation of Myers' claim against Ideal Mutual Insurance Company for punitive damages and attorneys fees or any other damages not assigned herein in the defense of the declaratory judgment action now pending in the United States Federal District Court in Dallas, Texas....

complaint for declaratory judgment, claiming that the settlement agreement violated certain conditions and exclusions of the policy and, therefore, further absolved Ideal of any obligation to the Myers Estate under the Policy.[6] The defendants responded with a counterclaim for the full amount of the settlement agreement, punitive damages in the amount of $500,000, and attorney's fees. The defendants contended that Ideal failed to properly defend, investigate, or settle the Strothers' claim against the Myers Estate, failed to timely notify the Myers Estate of the real conflict of interest, and failed to execute and deliver to the Myers Estate a valid reservation of rights. The defendants further claimed that Ideal's conduct constituted negligence by failing to consider the best interests of the Myers Estate and by intentionally withholding investigative materials, data and other information owing to the Myers Estate. Accordingly, the defendants argued that Ideal waived and was estopped from asserting the defense of "no coverage."

On April 14, 1982, Ideal moved for summary judgment on the issue of coverage based on its claim 1) that the Myers Estate breached conditions and exclusions of the policy precluding voluntary assumption of liability for the aircraft accident, vis-a-vis the settlement agreement, and 2) that the pilot warranty clause precluded coverage for "occurrences" in weather conditions for which the pilot was not properly qualified. In response defendants contended that they were entitled to enter into a settlement agreement once Ideal refused to de-fend the Rockwall action and sent its reservation of rights letter, and that the pilot warranty clause did not preclude coverage for the January 7th plane crash. The district court, on August 14, 1984, in a Memorandum Opinion and Order, granted summary judgment for Ideal. We reverse.

### IDEAL'S DUTY TO DEFEND

The district court found that the defendants were not entitled to make a claim against Ideal. According to the court, the settlement agreement constituted a breach of the "no action" clause of the policy. The clause provides:

Condition No. 6

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this Policy, nor until the amount of the Insured obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement between the Insured, the Claimant and the Company....

Based on the Myers Estate's "breach" of the no action clause, the trial court held that

the Estate has no standing to make a claim upon Ideal because no judgment has been rendered against the Myers Estate, the Myers Estate did not obtain Ideal's consent to the settlement agreement, and the Myers Estate has not paid —and, indeed, is not liable to pay—any

---

6. Ideal's supplemental complaint cites the following policy provisions:

EXCLUSIONS

This policy does not apply:
   1. to any liability assumed by the insured under any contract or agreement or to any loss or damage to the aircraft for which the Insured has assumed the liability of others;

The policy is subject to the following conditions:

CONDITIONS

15. **Assistance and Cooperation of the In-sured.**

.   .   .   .   .

The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of an occurrence.

23. **Fraud or Misrepresentation.** This policy shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud, or false swearing by the Insured touching any matter relating to this

amounts under the settlement agreement.[7]

■ In their counterclaim and response to Ideal's motion for summary judgment, the defendants claimed that Ideal failed to defend the Rockwall action,[8] and that, therefore, the Myers Estate was entitled to settle with the Strothers. We agree that a no action clause is not an absolute bar to settlement between the insured and a third party claimant, where the insurer has breached its duty to defend the insured. In *Rhodes v. Chicago Insurance Co.*, 719 F.2d 116, 120 (5th Cir.1983), this Court summarized the applicable Texas law.

It is well settled that once an insurer has breached its duty to defend, the insured is free to proceed as he sees fit; he may engage his own counsel and either settle or litigate, at his option. *Great American Indemnity Co. v. Corpus Christi*, 192 S.W.2d 917, 919 (Tex.Civ.App.—San Antonio 1946, writ ref'd n.r.e.). Having forfeited its right to conduct the defense, the insurer is bound by the settlement or judgment. *Ranger Insurance Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.) (settlement); *Ridgway v. Gulf Life Insurance Co.*, 578 F.2d 1026, 1029 (judgment; Texas law), *reh'g denied*, 583 F.2d 541 (5th Cir.1978). An additional consequence of a breach of the duty to defend is the inability to enforce against the insured any conditions in the policy; the insured is no longer constrained by "no action" or "no voluntary assumption of liability" clauses. *Gulf Insurance Co. v. Parker Products, Inc.*, 498 S.W.2d 676, 679 (Tex.1973). A consequence of

breach, therefore, is that an insurer who wrongfully failed to defend its insured is liable for any damages assessed against the insured, up to the policy limits,[4] subject only to the condition that any settlement be reasonable. The insured must demonstrate only that, in settling, his conduct conformed to the standard of a prudent uninsured. The insurer may also be liable for attorneys' fees incurred by the insured in order to defend the suit. *Steel Erection Co. v. Travelers Indemnity Co.*, 392 S.W.2d 713, 716 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.).

\* \* \* \* \* \*

[4] This Court has held that the insurer may be liable even for amounts in excess of the policy limits. *Blakely v. American Employers' Ins. Co.*, 424 F.2d 728, 734 (5 Cir.1970).

■ The district court rejected the defendants' arguments and found that *"Ideal agreed to defend the Myers Estate...."* We agree. Ideal, through its reservation of rights letter, offered to defend the Estate subject to its right to deny liability under the policy. Ideal then filed its suit for declaratory judgment in order to determine its rights and obligations as to the defendants, including its duty to defend and indemnify the Myers Estate. Ideal's conduct in this regard was not improper. *See Employers Casualty Co. v. Tilley*, 496 S.W.2d 552 (Tex.1973); *Western Casualty and Surety Co. v. Newell Manufacturing Co.*, 566 S.W.2d 74 (Tex.Civ.App.—San Antonio, 1978, writ ref'd n.r.e.). Moreover, the Myers Estate did not object to Ideal's offer of a conditional defense, and there-

insurance or the subject thereof, whether before or after a loss.

7. As the district court noted, the Strothers' right to make a claim upon Ideal is derivative to the Estate's right.

In the absence of statutory provisions or required form policies, it is generally held that the injured person stands in the shoes of the insured, and his rights against the insurer are no greater and no less than those of the insured. *Seguros Tepeyac, S.A. Compania Mexicana de Seguros Generales v. Bostrom*, 347 F.2d 168, 178 (5th Cir.1965) (quoting 8 Appleman, Insurance Law and Practice, § 4811 (1962 ed.)). Illinois National's claim, moreover, is based on work-

men's compensation benefits paid to the Strothers.

8. The policy provides:

**II. Defense, Settlement, Supplementary Payments.** With respect to such insurance as is afforded by this Policy for bodily injury liability and for property damage liability coverages the Company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit, is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient....

re, by its silence, constructively consented to Ideal's legal representation. *See Western Casualty*, 566 S.W.2d at 76. Since Ideal did not breach its duty to defend the Myers Estate, it is free to assert any defenses available to it under the policy.

### WAIVER AND ESTOPPEL

Under Texas law, the general rule is that, "[w]hile a waiver or estoppel may preclude an insurer's policy defense arising out of a condition or forfeiture provision, these doctrines do not normally operate to prevent the assertion of a defense of no coverage." *Pacific Indemnity Co. v. Acel Delivery Service, Inc.*, 485 F.2d 1169, 1173 (5th Cir.1973), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974). An exception to the general rule arises "[i]f an insurer assumes the insured's defense without obtaining a non-waiver agreement or a reservation of rights and with knowledge of the facts indicating noncoverage ..." *Id.* (citations omitted). Moreover, "[f]or estoppel to prevent the assertion of a defense of noncoverage in accordance with this exception, there must be a showing of prejudice [to the insured] ... [a]s to the application of waiver, the [insured] must demonstrate a voluntary relinquishment of a known right." *Id.* (citations omitted).

The defendants argue that even if Ideal did not breach its duty to defend the Myers Estate, it has, by its conduct, waived or is estopped from asserting any of its defenses under the policy. The defendants make three arguments. First, the defendants contend that Ideal failed to deliver an effective reservation of rights letter to the Myers Estate. They claim that the form and content of Ideal's letter was defective in that it failed (1) to identify Ideal as the insurer, (2) to inform the Myers Estate of the conflict of interest, and (3) to fully advise the Estate of its rights, including the right to secure independent counsel in order to obtain an unconditional defense.

■ We agree that an ineffective reservation of rights results in waiver of and estoppel to assert all policy defenses.

*Farmers Texas County Mutual Insurance Co. v. Wilkinson*, 601 S.W.2d 520, 523 (Tex.Civ.App.—Austin 1980, writ ref'd n.r. e.). *See also, Rhodes,* 719 F.2d at 120 ("notice of intent to reserve rights must be sufficient to inform the insured of the insurer's position and must be timely"). However, the defendants do not show how the reservation of rights letter from Charles England of Aero Adjustment Bureau was defective. On the contrary, the letter adequately apprised the Myers Estate of Ideal's position and the Estate's rights. The letter specifically identified the policy in question; informed the Estate that McElhaney had been retained to defend the Rockwall action; and apprised the Estate of the initial results of Ideal's investigation and of Ideal's reservation of rights under the policy, including the right to withdraw from the defense of the Rockwall action. Moreover, the letter advised the Myers Estate that:

> you are at liberty to secure counsel of your own choice, at your expense to represent you in regard to the amount [sued] which is in excess of your insurance coverage ... [and] that as to such excess there could be a conflict of interest between your insurers and the Estate and that if negligence of the insurers causes a judgment to be rendered against the Estate in excess of the insurance limits, it could be that the company might be responsible for the excess judgment.

■ Second, the defendants argue that Ideal has waived or is estopped from asserting its defenses because the letter was "untimely" in that it was delivered two years after the plane crash. The defendants, however, do not demonstrate how delivery of the reservation of rights letter on February 20, 1980, was untimely, or otherwise prejudicial to the Myers Estate. Even if Ideal's investigation disclosed a basis for noncoverage shortly after the January 7, 1978, plane crash, any potential conflict of interest between Ideal and the Myers Estate—and consequently, any corresponding duty on Ideal to reserve its rights or de-

fend unconditionally—did not arise until the Strothers filed a wrongful death action against the Estate on January 4, 1980. Although we do not hold that an insurer is at liberty in all circumstances to await the filing of an actual lawsuit before advising its insured of its position and of a potential conflict of interest, we conclude that in the instant case the defendants have failed to demonstrate prejudice from the delay, if any, between Ideal's discovery of a possible basis for noncoverage and its delivery óf the reservation of rights letter.

▮ Finally, the defendants claim that the conduct of attorney John McElhaney estops Ideal from asserting any policy defenses. According to the defendants, McElhaney never discussed the potential conflict of interest arising from Ideal's representation of the Myers Estate; the defendants rely on *Employers Casualty Co. v. Tilley*, 496 S.W.2d 552 (Tex.1973) in support of their position.

In *Tilley* the Supreme Court of Texas held that an attorney

> selected, employed and paid by the insurance company ... becomes the attorney of record and the legal representative of the insured, and as such ... [i]f a conflict arises between the interests of the insurer and the insured, the attorney owes a duty to the insured to immediately advise him of the conflict.

*Tilley*, 496 S.W.2d at 558. The Court further held that the attorney's duty to inform the insured of a conflict of interest continues where such a conflict develops after the insurer has obtained a nonwaiver agreement or reservation of rights:

> .... the mere obtaining of a nonwaiver agreement does not give the insurer a right to do anything it may wish to prejudice the rights of the insured and thereafter continue to rely upon the nonwaiver agreement, since such agreement may be waived by the insurer's subsequent conduct.

*Id.* at 560. (quoting 16A Appleman, Insurance Law and Practice, § 9377, 879–880).

Notwithstanding McElhaney's obligation to the Myers Estate, the defendants do not indicate how McElhaney's failure to explain the potential conflict of interest between Ideal and the Myers Estate prejudiced the Estate. As noted above, Ideal's reservation of rights letter already informed the Myers Estate of a potential conflict of interest arising from Ideal's representation of the Estate in the Rockwall action. Moreover, quite unlike the attorney in *Tilley*, McElhaney did not actively *work against* the Estate on the conflicting coverage question. McElhaney's affidavit establishes, and the defendants do not dispute, that he "performed no services directly for Ideal before, after or during the pendency of the Rockwall Action." Thus, the potential conflict of interest never actually emerged; McElhaney's conduct, therefore, does not operate to estop Ideal.

In view of the defendants' inability to demonstrate that Ideal has voluntarily relinquished a known right or has prejudiced the Myers Estate, we must conclude that Ideal has not waived nor is estopped from asserting any defense available to it under the policy.

## THE "NO VOLUNTARY ASSUMPTION OF LIABILITY" AND "NO ACTION" CLAUSES

In its supplemental complaint for declaratory judgment and motion for summary judgment Ideal claimed that the Myers Estate breached the "no voluntary assumption of liability" clauses, vis-a-vis the settlement agreement, and that, therefore, "no coverage" was owed to the Estate under the policy. Moreover, as discussed earlier, the district court ruled that the settlement agreement violated the no action clause and, thus, precluded the defendants from making a claim upon Ideal.

In *McGuire v. Commercial Union Insurance Co. of New York*, 431 S.W.2d 347 (Tex.1968), the insured settled a wrongful death action in which she had been plaintiff. A counterclaim, filed by one of the defendants, was severed from the original suit. The insurer claimed that the settlement agreement operated to discharge it

from its obligations under the insurance policy issued to plaintiff's decedent. The Supreme Court of Texas held that

> because of the provisions of an insurance policy granting the insurer the right to defend suits and requiring the insured to cooperate with the company, the [insured] cannot make any agreement which would operate to impose liability upon his insurer or would deprive the insurer of the use of a valid defense.... However, this principle will not operate to discharge the insurer's obligations under the policy unless the insurance company is actually prejudiced or deprived of a valid defense by the actions of the insured.

*McGuire,* 431 S.W.2d at 352–53 (citations omitted).

■ The settlement agreement, on its face, does not *impose* liability upon Ideal under the terms of the policy. The agreement specifically attempts to preserve a claim only "for the proceeds of any insurance that *might* be provided by Ideal Mutual Insurance Company and no other" (emphasis added). Even if liability were assumed, under *McGuire,* a corresponding finding of prejudice must be made before the no assumption of liability clauses would operate to discharge Ideal. While we readily acknowledge that the facts of the case at bar are distinguishable from those in *McGuire,* and that the no action clause does not require assumption of liability by the insured to trigger the no action defense, we see no reason why the ruling in *McGuire* should not here apply with equal force. We hold that a settlement agreement does not operate to discharge the insurer's obligations under its policy, unless the insurer is actually prejudiced or deprived of a valid defense by the actions of its insured.

In its Memorandum Opinion and Order the district court stated that "this case is precisely the type of case in which the insurance company is entitled to insist on compliance [with the no action clause] *for its own protection.*" The court also characterized the settlement agreement as "odiferous" because it attempts to "impose an uncompromised full balance of a judgment upon the insurer, while the insured incurred no real detriment." (quoting *Sargent v. Johnson,* 551 F.2d 221, 232 (8th Cir.1977)). However, an examination of the lower court's opinion reveals nothing in terms of actual prejudice to Ideal from the settlement agreement. We note that the settlement agreement does not bind Ideal or preclude it from asserting any available defense in any action against it, including the defendants' counterclaim, such as the pilot warranty clause defense.

■ We hold that the actions of the Myers Estate in settling with the Strothers neither prejudices Ideal nor deprives it of any available policy defense and, therefore, does not discharge Ideal from its obligations under the policy. Accordingly, the district court's decision granting summary judgment in Ideal's favor on the basis of the no action clause must be reversed.

### THE PILOT WARRANTY CLAUSE

■ The only issue before this Court—and we conclude, the only proper issue during the entire course of this litigation—is whether Ideal is discharged from its obligation to indemnify the Myers Estate under the pilot warranty clause. The district court held that "the summary judgment record establishes that the Policy does not cover the accident in question because the pilot, John Myers, did not hold the FAA rating required for the flight." The policy provides in part:

### EXCLUSIONS

This policy does not apply:

.    .    .    .    .

2.  To any occurrence or to any loss or damage occurring while the aircraft is operated in flight by other than the pilot or pilots set forth in item 7 of the Declarations.

\*    \*    \*    \*    \*    \*

Declaration number 7

PILOT CLAUSE: Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight: See Endorsement number 2.

\* \* \* \* \* \*

Endorsement number 2 provides as follows:

. . . . .

"X" Other: John Myers or T.D. Brown provided each has at least 10 hours in make and model aircraft insured.

The court correctly noted that the Federal Aviation Administration ("FAA") regulations govern coverage of the flight in question, since the policy specifically refers to FAA ratings. 14 C.F.R. § 61.3(e) provides:

"No person may act as a pilot in command of a civil aircraft under instrument flight rules, or in weather conditions less than the minimum prescribed for VFR flight unless—

(1) In the case of an airplane, he holds an instrument rating...."

Under 14 C.F.R. § 91.105, the minimum weather conditions for a VFR flight are visibility of at least one statute mile. Accordingly, characterization of the flight as VFR or IFR—and the determination of whether the pilot, John Myers was required to have an IFR rating—turns on the weather conditions that existed during the flight in question.

In *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 762 (Tex.1977), the Supreme Court of Texas adopted the "inception of the flight" test for purposes of characterizing the flight as VFR or IFR. The court held that

'the flight,' as used in this pilot warranty clause, refers to the entire time the aircraft is in flight; and 'the flight' must be looked at as a whole, rather than in segments, in determining its IFR or VFR character. We have concluded ... that the flight should be characterized as of its inception. The weather conditions existing at the beginning of the flight

should be looked to in determining whether the flight is a VFR or an IFR flight.

*Glover*, 545 S.W.2d at 762.

In *Glover*, the court did not "consider as controlling the pilot's knowledge of weather conditions along his flight path or at his destination in characterizing the flight as an IFR or VFR." *Id.* at 763. However, the court added

Even if the pilot's knowledge is to be considered in characterizing the flight, the stipulated facts show that Rogers did not know at the flight's beginning that he would be forced to operate his aircraft under IFR weather conditions. The flight is to be characterized at its inception; therefore, if the pilot's knowledge is important, the knowledge that he will be flying in IFR weather must exist at the flight's inception.

*Id.* at 763.

In *United States Fire Insurance Co. v. Marr's Short Stop of Texas, Inc.*, 680 S.W.2d 3 (Tex.1984), the court reconsidered the importance of pilot knowledge at the inception of the flight. The court noted that, applying the inception rule in *Glover*, "the pilot 'did not *know* when he took off that he was flying into IFR weather'." *Marr's Short Stop*, 680 S.W.2d at 6 (quoting *Glover*, 545 S.W.2d at 763). By contrast, in *Marr's Short Stop* the pilot, "at the inception of his flight, *knew* he would be flying into IFR weather conditions." *Id.* (emphasis added). The court concluded that the pilot's knowledge of IFR weather conditions along his flight path meant that his flight would be characterized as an IFR flight and would preclude recovery under the policy. *Id.*

After *Glover* and *Marr's Short Stop* it is clear that pilot knowledge is at least a factor that a court must consider in characterizing a flight as IFR or VFR under the inception rule. The district court concluded that "at the inception of the flight, the pilot had to have known that he would be taking off in IFR conditions." The court based its conclusion on the deposition testimony of five witnesses, which testified that fog lim-

ited visibility in the vicinity of Rockwall Airport between 5:30 a.m. and 7:00 a.m.[9] to less than a quarter-mile.

The court, moreover, discounted Syble Myers' deposition testimony that the weather was cold and clear at her house a few miles outside of town because *"she had no knowledge of the weather conditions at the Rockwall Airport at that time."* However, under the district court's own standard, none of Ideal's deposition witnesses' testimony should have been credited, since none of the witnesses were at Rockwall Airport between 6:05 a.m. and 6:11 a.m.—the time of the supposed take off and crash. Furthermore, as the district court noted, Myers received a weather briefing for a flight from Rockwall to Wichita Falls and was told at 4:44 a.m. that the weather conditions for the flight were "VFR with no restrictions to visibility."

Considering the evidence in the light most favorable to the defendants, we conclude that there exists a genuine issue of material fact concerning the weather conditions, and John Myers' knowledge of such conditions, at Rockwall Airport at the inception of Myers' planned flight to Wichita Falls. Accordingly, summary judgment in Ideal's favor on the issue of noncoverage under the pilot warranty clause of the policy was improper and must be reversed.[10]

## CONCLUSION

In sum, we conclude that Ideal neither breached its duty to defend the Myers Estate in state court nor engaged in any conduct prior, during, or following the state court proceeding that would constitute a waiver or estoppel of its right to assert any defenses under the policy issued to John Myers. Nonetheless, we hold that a settlement agreement does not operate to discharge the insurer's obligations, unless the insurer is actually prejudiced or de-prived of a valid defense. We conclude that the settlement agreement in this case does not prejudice Ideal or otherwise deprive it of a valid defense in any action against it under the terms of the policy. We therefore, reverse the district court's Order granting summary judgment for Ideal on the basis of the no action clause.

We also conclude that the record fails to establish that IFR weather conditions prevailed at Rockwall Airport at the time of the take-off and the crash or that John Myers knew of such conditions. Consequently, we hold that a genuine issue of material fact was before the court, and that summary judgment on the issue of noncoverage under the pilot warranty clause was improper and must be reversed.

The Opinion and Order of the district court is, therefore, Reversed and Remanded for a determination at trial of the weather conditions, and the pilot's knowledge of those conditions, at Rockwall Airport at the inception of the ill-fated flight.

REVERSED and REMANDED.

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part and dissenting in part:

I concur with Judge Garza's thoughtful opinion except its holding that even though Ideal provided a defense to the claim against the Myers Estate, it may not enforce the "No Voluntary Assumption of Liability" clause in its policy. The panel justifies this result by reasoning that the settlement between the Myers Estate and the Strothers did not prejudice Ideal because Ideal retained its right to contest *coverage*, overlooking the probability that the Myers Estate, by settling, conceded liability for the death of Phillip Strother. Before settlement, Ideal could have asserted not only non-coverage, but also that its

---

9. The time of the crash, which was estimated at 6:11 a.m., was based on the reading of a stopped wristwatch found in the aircraft wreckage. Although the defendants contested this finding in their brief and at oral argument, they did not dispute this "fact" in their answer to Ideal's original complaint or in their opposition to summary judgment.

10. The defendants have raised other points of error; however, our resolution of the foregoing issues renders a discussion of those points unnecessary.

insured, John Myers, was not negligent in the airport accident—and thus that the Myers Estate was not liable even if there were coverage. A settlement that concedes liability by an insured is exactly the prejudice the policy provision was intended to prevent, and this is why the district court stated that "this case is precisely the type of case in which the insurance company is entitled to insist on compliance *for its own protection.*" (emphasis in original).

On remand, I would leave for trial the question of whether the apparent concession of liability by the Myers Estate in the settlement agreement has prejudiced Ideal. Because the record suggests and the insured asserts that the defense provided by Ideal in the Strother's suit may have been less than adequate, I would also leave for trial the question of whether the duty to defend obligation was so breached by Ideal as to allow the Myers Estate to settle.