356

## AUTOMOBILE UNDERWRITERS' INS. CO.
### v. LONG.
#### No. 1430—6065.

Commission of Appeals of Texas, Section B.

Oct. 4, 1933.

Cunningham, Moursund & Johnson, of San Antonio, and R. G. Storey, of Dallas, for plaintiff in error.

Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for defendant in error.

RYAN, Judge.

Janie Long, administratrix of the estate of James H. Long, deceased, sued the Automobile Underwriters' Insurance Company to recover on a policy of insurance insuring James H. Long against liability or loss resulting from damages on account of bodily injuries or death inflicted upon any person, and resulting from the use of a Packard automobile described in said policy and owned by said James H. Long.

While said policy was in force, on August 6, 1927, and while said automobile was being operated by said Long on a public road near the town of Gilmer, Tex., it crashed into a bridge or culvert upon the side of the road, alleged to have been the result of Long's negligence.

Gladys Long, a minor, was riding with him as an invited guest; she was thrown out of the car, received severe personal injuries, and on November 23, 1927, by her mother as next friend, filed suit against said James H. Long in the district court of Bexar county, to recover damages in the sum of $25,000.

Long gave notice of the accident to the company; the company at first denied all liability under the policy on the ground that Gladys Long was a member of the family of James H. Long, but later undertook the defense of the suit against James H. Long and employed counsel, who continued to defend him therein until they withdrew from the case upon the second trial thereof.

After such withdrawal of counsel, Gladys Long recovered judgment against James H. Long in the sum of $10,000. Said judgment was rendered on January 15, 1929. James H. Long died soon thereafter, on January 25, 1929, and Janie Long, his wife, was appointed and qualified as administratrix of his estate. In her capacity as administratrix, under orders of the probate court, she borrowed the necessary funds and paid said judgment (which then amounted to the sum of $10,516, principal and interest) to the guardian of Gladys Long, after which she brought the present suit against the insurance company to recover upon the policy.

The trial court, without a jury, rendered judgment against the company in the sum of $5,533 (said sum being $5,000 stipulated in the policy, together with legal interest from the date of the judgment against James H. Long), which was affirmed by the Court of Civil Appeals. 39 S.W.(2d) 1102.

## Opinion.

First. Plaintiff in error contends that certain conduct of James H. Long constituted a failure on his part to co-operate with the company in the defense of the suit of Gladys Long, as required by the policy, and therefore violated its terms. More specifically the conduct complained of is summarized in the application for writ of error, as follows:

(1) That Long retracted the written reservation of policy rights which he had theretofore executed upon the day of the trial of the cause.

(2) That he employed counsel to file suit against him in behalf of his niece.

(3) That he retracted and disputed his previous written statement regarding how the accident occurred.

(4) That he admitted in his testimony that he wanted to see the plaintiff recover.

(5) That he notified defendant's attorneys that he would retract his written statements, especially regarding the speed of his car.

(6) That he had been taking the advice of plaintiff's attorneys rather than the advice of his own attorneys employed by the defendant to represent him in the original case.

(7) That he denied the truth of statements contained in pleadings filed with his knowledge and consent and signed by him, and retracted a portion thereof.

(8) That he admitted to plaintiff and plaintiff's attorneys that he was liable in damages and wanted a judgment rendered against him so that recovery could be made against the defendant insurance company.

(9) That he continually conferred with plaintiff's attorneys, that he consulted them before the plaintiff ever did so, and made arrangements to employ them in order to bring suit against him.

Whether Long failed to co-operate in the particulars named, was, of course, a question of fact, which was decided adversely to the company by the trial court, affirmed by the Court of Civil Appeals.

To sustain the company's contention, it must therefore be assumed that under the evidence in the case, there was no dispute as to the controlling and material facts and that they led inevitably to the one and only conclusion that Long did not comply with the terms of the policy in that respect.

On this subject, the policy provided: "The Subscriber * * * shall immediately forward to the Attorneys every notice, summons or other process served on him on behalf of third persons, when the Exchange will, at its own cost, defend in the name and on behalf of the Subscriber, suits covered in Clauses Four and Five hereof. The Subscriber shall aid in securing information, effecting settlements and prosecuting appeals, but no person shall (without the written consent of the Attorneys previously given) voluntarily assume or admit any claim, except at his own cost. In the event any claim of any character be asserted against the Subscriber by any person or persons during the term of this Contract, the Subscriber shall render such aid and assistance in the investigation of said claim as may be required of him by the Exchange, and in the event of suit on such claim the Subscriber shall assist in securing the attendance of all witnesses and shall at all times be in personal attendance upon the trial of the suit; Provided further that the failure of the Subscriber to assist or cooperate in any of the particulars herein last above set forth, shall render this Contract null and void and relieve the Exchange of any liability hereunder."

The agreed statement of facts shows that Long gave the required notice of the accident to the company, it obtained statements from him, and investigated all facts in connection therewith, and when the suit was filed employed attorneys after receiving from Long the citation which had been served upon him. Such agreed statement of facts shows also that each time Long was notified by the defendant company, and each time that the case was set for hearing, he attended court at his own expense, whenever requested by the insurance company.

The insurance was: "Against direct loss resulting directly from the manipulation or use of any automobile described herein, by reason of the liability imposed by law upon Subscribers, for damages on account of bodily injuries (including death resulting therefrom) accidentally inflicted upon any person or persons during the contract period, liability at the Exchange being limited to Five Thousand Dollars for injury to or death of any person, and, subject to the same limit for each person, limited to Ten Thousand Dollars for any one accident involving injury, to or death of several persons. In addition to these limits, however, the Exchange will also pay the cost and expense attendant upon the investigation, adjustment and settlement of claims, all costs taxed against the Subscriber, in any legal proceedings defended by the Exchange as provided in Condition B, and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the Exchange's liability as herein expressed; and such immediate surgical relief as is imperative at the time of the accident."

The policy provided also, "The Exchange will also defend in the name and on behalf of the Subscriber any suits which may at any time be brought on account of such injuries and demanding damages therefor, although such suits, allegations or demands are wholly groundless, false or fraudulent," but did not cover "any obligation assumed by or imposed upon, the subscriber to any member of the family or household of the subscriber."

It thus appears that Long did comply with the terms of the policy unless it should be held that he failed to co-operate with the company in the particulars above stated, and that such failure constituted such a breach of the policy as released the company from liability and justified the withdrawal of defending counsel selected by it.

The record shows that upon being notified by Long of the accident the company denied liability on the assumption that the injured party was a member of his family or household, and therefore not within the protection of the policy.

Long then sought legal advice, to ascertain whether he was protected by the policy, and was told the company could not escape liability on the ground stated. The agreed statement of facts shows that Gladys Long, the injured party, was a niece of James H. Long, but lived with her mother, brother and sisters in their own home, which was located next door to that of James H. Long, and did not live in his home, was not dependent upon him for support, and he had no authority over her, all of which was known to the company immediately after the happening of the accident, during the month of August, 1927. After he had obtained such independent legal advice, in conversation with Mrs. Willie K. Long, mother of Gladys, he suggested that she confer with the attorney whose advice he had obtained.

There is no evidence in the record that Long ever employed attorneys to defend said suit, and his undisputed testimony denied that he had ever employed counsel.

As above stated the suit of Gladys Long by next friend Willie K. Long (her mother) against James H. Long, was filed on November 23, 1927. He delivered citation and notice to the company, and it, notwithstanding denial of liability hereinbefore referred to, employed attorneys of its own selection, who, on December 28, 1927, as attorneys for James H. Long, filed answer consisting of general demurrer and general denial. The company thus took charge of the defense through attorneys selected by it, in compliance with the terms of the policy, which did not require stipulation reserving policy rights in the company, and no such stipulation was then executed by Long or required of him.

It appears from the agreed statement of facts that under date April 20, 1928, the company advised Long that the case was turned over to it and requested him to get in touch with its office immediately "that we may be prepared properly in our defense."

It thus is shown that the company through attorneys of its own selection actually entered upon the exclusive defense of the suit, they agreed to a setting for trial for April 30, 1928, when the case was heard, and after continu-ing through several days resulted in a mistrial.

The company without any reservation whatever, through said attorneys, took up the defense of the case, filed pleadings in his behalf, advised him and arranged for settings of the case. The attorneys so selected by the company were for the purposes of that case the attorneys of Long, and the relation of attorney and client existed between them.

On April 30, 1928, said attorneys obtained from Long the following stipulation:

"San Antonio, Texas, April 30, 1928.
"Automobile Underwriters Insurance Co., Dallas, Texas.
"In Re: Policy No. 186321—J. H. Long.
"Gentlemen: Regarding the suits of Gladys Long vs. J. H. Long, and Willie K. Long vs. J. H. Long pending in the District Court of the 37th Judicial District of Bexar County, Texas, I do hereby agree that you may defend the above cases in the trial thereof and in any negotiations for settlement with full reservation of all policy rights on your part, and especially agree that by such defense you will not waive any of your rights under said policy as involving the matters involved in said suits.

"J. H. Long."

Long claimed that when he signed said stipulation he did not understand its meaning, and when he finally became aware of the true meaning and effect of the stipulation he advised the attorneys as follows:

"San Antonio, Texas, January 15, 1929.
"Dear Sirs: Yesterday, when in Judge Anderson's office there seemed to be some confusion in your mind about my having waived some of my rights, by reason of a paper you had me to sign.

"This is to notify you that I did not so understand the paper and to tell you that I did not then, and do not now waive any rights of any kind.

"I request that you and the other lawyers, which the Insurance Company has put on the case continue to defend me. I shall do all I honestly can to support you, but I can not do more than tell the truth. I shall expect the Company to pay any judgment that may be rendered against me. Please understand that I waive nothing.
"Very truly yours,

"James H. Long."

Thereupon the attorneys withdrew from the case, which had been reset for trial for that date, did not ask for a postponement, or take any steps to protect Long, and left him in the midst of the trial without representation.

■ When counsel were employed by the company they became Long's unqualified attorneys of record, and as such they owed him the duty to conscientiously represent him, and

if the point was reached where his interests and those of the company conflicted, he should have been so informed and given the opportunity to protect himself. Certainly, the stipulation, if valid, was contrary to his interests, and, as testified to by him, he did not understand its meaning at the time he signed it, and did so only at the request of the attorneys.

■ The policy obligated the company to defend the suit, and, having entered upon the defense, it was in no position to require Long, without consideration and without his full understanding, to waive himself out of court.

■ When an insurance company contracts to defend suits against the insured it is bound in good faith to perform this obligation and has no right to insist upon the insured signing away his rights as a condition precedent to the performance of this duty. American Fid. & Cas. Co. v. Williams (Tex. Civ. App.) 34 S.W.(2d) 396, writ of error refused; Stowers Furniture Co. v. Indemnity Co. (Tex. Com. App.) 15 S.W.(2d) 544; Rieger v. Ins. Co., 202 Mo. App. 184, 215 S. W. 920; De Pasquale v. Ind. Co., 50 R. I. 509, 149 A. 795.

From Long's testimony it appears that the meaning and effect of the above stipulation, waiver was told to him by one of plaintiff's counsel, during a hearing on the attorneys' motion to withdraw from the case, and he then wrote the letter of January 15, 1929.

■ As stated above, Long was under no obligation to execute the stipulation, and when he learned its effect he had the right to refuse to be bound thereby, regardless of how or from whom he obtained the information.

■ It is further claimed that Long retracted and disputed his previous statement to the company's representative regarding the accident and rate of speed of the car he drove. His version is that he told the company's representative that "he was going no less than thirty eight miles" an hour, but the latter inserted thirty five miles; also, that he was responsible for the accident, notwithstanding which, the company's agents prepared the statements to the contrary. The company introduced and relied upon Long's testimony at the hearing on the motion of counsel for leave to withdraw; neither counsel nor agent for the company took the stand or introduced any evidence contrary to that of Long. In this state of the record, the company cannot complain that Long insisted upon telling the truth rather than abide by statements which the company's agents prepared and induced him to sign, and which he testified he signed under protest.

A failure to co-operate is not shown by the fact that the assured gave different testimony at the trial from statements theretofore made by him in the absence of anything to show that he willfully testified falsely; it not being found that there was any failure to furnish information to the defendant, nor that the information was intentionally false. Guerin v. Indemnity Co., 107 Conn. 649, 142 A. 268; Conroy v. Casualty Co., 292 Pa. 219, 140 A. 905; Francis v. Accident Co., 100 Vt. 425, 138 A. 780.

■ It therefore follows that there was sufficient evidence to sustain the conclusion of the trial court that Long did not fail to co-operate with the company, under the terms of the policy in the particulars named.

Second. In American Indemnity Co. v. Fellbaum, 114 Tex. 127, 263 S. W. 908, 909, 37 A. L. R. 633, a case similar to this in many particulars, Chief Justice Cureton said: "The effect [of the policy] is to turn the defense of the case against the assured completely over to the indemnity company. The company undertakes to relieve the assured of all trouble with reference to the matter, and undoubtedly of all liability for the suit, to the extent of the limit specified in the policy. The company's obligation is manifestly to defend successfully, not imperfectly nor unsuccessfully, else its obligation is to settle. It is true that the provision does not say that if the indemnity company fails in its defense, and judgment is rendered against the assured, it will pay the judgment; but we believe that this was the purpose and intention of the parties when the contract was made."

■ In that case the indemnity company appeared and conducted the defense; so here, up to the time when the company's counsel withdrew, the company had complete charge of the defense. It was the company's duty, as said in the Fellbaum Case to defend successfully, else to settle. It could not, after taking full charge of the defense, require, as a condition to its continuance therein, the waiver of all his protective rights by Long; he having violated none of the terms of the policy as was necessarily found by the trial court. Lee v. Casualty Co., 90 Conn. 202, 96 A. 952; Rieger v. Insurance Co., 202 Mo. App. 184, 215 S. W. 920; Standard Printing Co. v. Insurance Co., 138 Minn. 304, 164 N. W. 1022; Glens Falls Portland Cement Co. v. Insurance Company, 162 N. Y. 399, 56 N. E. 897.

We recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, Chief Justice.

Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the commission.