

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00581-CV

**IN THE INTEREST OF H.A.L.** and T.A.H., Children

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00759
Honorable Brenda Chapman, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:          Irene Rios, Justice
                 Beth Watkins, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: November 15, 2023

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her children H.A.L. (born 2010) and T.A.H. (born 2019).[1] Father appeals the trial court's order terminating his parental rights to his child, H.A.L. Mother and Father argue the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children. We affirm.

## BACKGROUND

On May 12, 2022, the Texas Department of Family and Protective Services removed H.A.L. and T.A.H. due to allegations of drug use, family violence, and general neglect. The

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and refer to the children's biological Mother and Father as such. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

Department obtained temporary managing conservatorship over the children and filed a petition to terminate Mother and Father's parental rights.

The Department also created family service plans for both parents. Mother's service plan required her to, inter alia, obtain safe, stable, and appropriate housing and provide proof of same; complete specified parenting classes; complete specified domestic violence classes; undergo a drug assessment and attend appropriate treatment; refrain from illegal drug use and alcohol abuse; submit to random drug testing; complete a psychological evaluation; and attend individual counseling as conditions to reunification. Recognizing that Father was incarcerated at the time of removal, Father's service plan required him to, inter alia, obtain safe, stable, and appropriate housing and provide proof of same upon his release; participate in and complete parenting classes; attend visitations upon his release; undergo a drug and alcohol assessment and attend to appropriate treatment; and complete domestic violence classes as conditions to reunification. The Department ultimately pursued termination of Mother and Father's parental rights.

On May 12, 2023, the trial court held a one-day bench trial. The trial court heard testimony from three witnesses: (1) Department caseworker Beatrice Hollins; (2) Mother; and (3) Father. After the conclusion of trial, the trial court signed an order: terminating Mother's parental rights to H.A.L. and T.A.H. pursuant to subsection (O); terminating Father's parental rights to H.A.L. pursuant to subsections (N) and (O); and finding termination of Mother and Father's parental rights was in the best interest of the children. Mother and Father appealed.

## BEST INTEREST

Mother and Father challenge the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of the children.

*Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's parental rights and that termination was in the best interest of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened

burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re M.G.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Applicable Law*

Mother and Father challenge the legal and factual sufficiency of the trial court's order that termination of their parental rights was in the best interest of the children. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the

Department satisfied this burden, the Texas Legislature has provided several factors[2] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use, which can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g., In re*

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

*K.J.G.*, 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

### *Application—Mother*

In her sole issue on appeal, Mother argues there is insufficient evidence to support the trial court's finding that termination was in the best interest of H.A.L. and T.A.H.

The trial court considered evidence that Mother could not provide for the children's physical and emotional well-being. One of the reasons for H.A.L.'s removal was that she was discovered with burns on her hands; the trial court could have disbelieved Mother's testimony that she never saw burns on H.A.L.'s hands. Another reason was that H.A.L. had not attended school for almost forty percent of the school year. Mother explained H.A.L. did not want to get up and go to school, although H.A.L. was then only ten years old. Additionally, while the children were in Mother's custody, her household was subject to a prolonged history of domestic violence. The trial court also heard testimony that H.A.L. was allegedly sexually abused. Although Mother was given the option to allow H.A.L. to attend therapy to address the alleged sexual abuse, she prevented H.A.L. from attending therapy while she maintained custody.

Trial occurred one year to the day after the children's removal. Over the course of the year, Mother failed to obtain stable housing and had not informed Hollins of the status of her employment as required by her service plan. At one point, Hollins traveled to Mother's last reported address and was told Mother only lived there occasionally. During removal, Mother also failed to complete parenting and domestic violence classes required by her service plan. And although Mother introduced into evidence two certificates of completion for parenting and

domestic violence classes, the certificates stated that each class was only four hours in duration. Hollins testified the four-hour classes were not compliant with the requirements of Mother's service plan: The parenting class required by Mother's service plan was a ten-week course, and the domestic violence class required by Mother's service plan was eighteen sessions requiring a couple of months to complete. The trial court could have determined that the two, four-hour classes neither complied, nor substantially complied, with the requirements of Mother's service plan. Mother's failure to complete classes required by her service plan is probative on the issue of best interest. *See In re C.H.*, 89 S.W.3d at 28.

Mother had also only begun substance abuse services by the time of trial. On April 25, 2022—prior to the children's removal—Mother tested positive for amphetamines and methamphetamines. During the period of removal, Mother was referred for drug testing over twenty times and failed to report a single time. One of those times, Mother stated she could not make the test because she did not have a vehicle; however, after Hollins offered to drive Mother for testing, Mother did not show up and stopped communicating with Hollins. Mother was also discharged from substance abuse class for non-compliance. The trial court could have inferred from Mother's failure to submit to court ordered drug testing that she was using drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). Because drug use can destabilize the home and expose children to physical and emotional harm if not resolved, its use is properly considered in determining termination is in the children's best interest. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8.

The trial court also properly considered the children's improvement since their current placement with their maternal aunt, who wishes to pursue adoption. While in their current placement, the children's medical and mental health care needs have been satisfied. That the

children's needs are being met in their current placement with a planned adoption further supports the trial court's finding that termination is in the children's best interest. *See In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of H.A.L. and T.A.H. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother's arguments to the contrary.

### *Application—Father*

In his sole issue on appeal,[4] Father argues there is insufficient evidence on *Holley* factors one, three, four, and five and, therefore, the judgment of the trial court must be reversed. A best interest finding, however, does not require proof of any particular factors, and evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest. *See In re G.C.D.*, 2015 WL 1938435, at *5; *In re J.B.-F.*, 2018 WL 3551208, at *3. Although we reject Father's primary contention, we nevertheless review the trial court's best interest finding.

During the entirety of the proceedings, Father was incarcerated in a federal detention center. A parent's incarceration, without more, will not support a termination order. *See In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at *3 (Tex. App.—San Antonio, May 16, 2018, no pet.) (mem. op). Nevertheless, incarceration is an appropriate factor for a trial court to consider in evaluating a child's best interest. *See id.*; *see also Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d

---

[4] Father did not appeal the trial court's predicate findings under subsections (N) and (O) or the trial court's determination that another man was T.A.H.'s father. Therefore, the only issue for our consideration is whether termination of Father's parental rights was in the best interest of H.A.L.

531, 533–34 (Tex. 1987). This is because "criminal conduct and incarceration affects a parent's life and the ability to parent, thereby subjecting a child to potential emotional and physical danger." *In re S.A.M.*, No. 04-18-00607-CV, 2019 WL 573469, at \*5 (Tex. App.—San Antonio Feb. 13, 2019, pet. denied) (mem. op). Furthermore, routinely subjecting a child to the probability that she will be left alone because her parent is in jail endangers the child's physical and emotional well-being. *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.—El Paso 2012, no pet.).

From the time H.A.L. was removed through trial, Father remained incarcerated. The record contains some information regarding Father's incarceration; however, the charges against him remained pending at the time of trial. Father testified he was in custody for discharging a firearm while under indictment for a state charge of felony family violence assault and professed that he was fighting the federal charge. Because of this, Father stated he was likely to remain in custody for two or more years even if he prevailed. Although Father was placed on probation for felony family violence in September 2021, he expressed no remorse for the actions leading to criminal charges and described his family violence offenses as: "I got in trouble for, like, a bear hug and, supposedly, a push. It wasn't nothing major, family violence."

The compounding effect of Father's acts resulted in his prolonged detention and absence from H.A.L.'s life, which left H.A.L. under Mother's sole care, and Mother was unable to provide for H.A.L.'s physical and emotional needs. *See In Interest of B.D.A.*, 546 S.W.3d 346, 361 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (termination in best interest of children where father's failure to provide safe environment for children during lengthy imprisonment resulted in children being left with mother, whose problems with drug abuse and neglectful supervision exposed children to current and future danger); *In re T.G.R.-M.*, 404 S.W.3d 7, 15 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Although the charges stemming from these two arrests were ultimately dismissed, each time the mother was jailed, she was absent from T.G.R.-M.'s life and

was not able to provide for T.G.R.-M.'s physical and emotional needs."); *see also In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (incarcerated parent's absence from child's daily life and inability to support child contribute to course of endangering conduct and parent's repeated commission of criminal acts subjecting parent to possibility of incarceration can negatively impact child's emotional well-being).

It is uncontested that Father could not comply with the service plan while he remained incarcerated, and the facility where he was incarcerated did not offer courses that complied with service plan requirements. However, Father testified the detention center offered about twenty classes, and he had completed several classes, including those aimed at domestic violence and anger management. The record does not contain any evidence proving his completion of these classes, and the trial court could have disbelieved he completed the classes or believed the classes did not substantially comply with the Department's requirements.

Additionally, during his incarceration, Father did not provide support to H.A.L. According to Hollins, H.A.L. reported that she spoke with her father twice through video call while he was incarcerated. However, Father denied to Hollins that he spoke with H.A.L. Father also dismissed H.A.L.'s behavior and school attendance issues and testified he believed it was ten-year-old H.A.L.'s fault—not Mother's—that H.A.L. had missed forty percent of a school year. Father's failure to regularly visit or maintain significant contact with H.A.L. and inability to provide H.A.L. with a safe environment support the trial court's best interest determination. *See* TEX. FAM. CODE § 161.001(b)(1)(N); *In re C.H.*, 89 S.W.3d at 28 (evidence proving a statutory ground for termination is probative on the issue of best interest).

Moreover, as with Mother, the trial court properly considered H.A.L.'s improvement since her current placement with her maternal aunt, who wished to pursue adoption. While in her current placement, H.A.L.'s medical and mental health care needs have been satisfied. That H.A.L.'s

needs are being met in their current placement with a planned adoption further supports the trial court's finding that termination is in H.A.L.'s best interest. *See In re A.M.M.*, 2020 WL 2139308, at \*4.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights was in the best interest of H.A.L. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Father's arguments to the contrary.

**CONCLUSION**

Having overruled appellants' issues, the judgment of the trial court is affirmed.

Lori I. Valenzuela, Justice
